CAROL ROBINSON-HUNTLEY,

        Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.;
EQUIFAX INFORMATION SERVICES, LLC;
TRANS UNION, LLC; and REGIONAL
FINANCE,

        Defendants.

Civil Action No. 1:24-cv-2036

## COMPLAINT

COMES NOW Plaintiff, Carol Robinson-Huntley ("Plaintiff"), by counsel, and files this Complaint against Defendants, Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); Trans Union, LLC ("Trans Union"); and Regional Finance. In support thereof, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of

information, § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

3. This case concerns Defendants' reporting on Plaintiff's credit report of a Regional Finance account that never belonged to Plaintiff. As of the date of the filing of this Complaint, Plaintiff remains unsure why the credit bureaus added this inaccurate information to her credit file. It appears that Plaintiff either has a mixed credit file or was a victim of identity theft.

4. On multiple occasions, Plaintiff disputed this erroneous reporting with Experian, Equifax, and Trans Union. However, Defendants continued to report the inaccurate information. Accordingly, Plaintiff alleges claims against Experian, Equifax, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b) and for their failure to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

5. Plaintiff also alleges claims against Regional Finance for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Plaintiff Carol Robinson-Huntley is a natural person.

9. Experian is a foreign corporation doing business in Virginia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Equifax is a foreign limited liability company doing business in Virginia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f)

11. Trans Union is a foreign limited liability company doing business in Virginia. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12. Regional Finance is a lender that makes personal loans, including loans for automobiles, furniture, and appliances. Regional Finance is a furnisher as that term is used in 15 U.S.C. § 1681s-2(b).

**FACTS**

13. This case concerns a Regional Finance account that does not belong to Plaintiff.

14. To be clear, Plaintiff has never had an account with Regional Finance, nor authorized someone to open one in her name.

15. Thus, in 2023, Plaintiff was surprised to find that an installment account with Regional Finance was on her credit report with each of the "Big 3" credit reporting agencies (Experian, Equifax, and Trans Union).

16. Plaintiff sent dispute letters to Equifax, Trans Union, and Experian on or around February 7, 2024.

17. Plaintiff's dispute letters included her full name, social security number, date of birth, her home address, and telephone number.

18. Plaintiff's disputes explained: "I do not owe any money to Regional Finance. I never requested this account. I did not apply for credit with Regional Finance. You report this account was paid in May 2023. I didn't make any payments to Regional Finance because I have no account with them. Either you are confusing me with someone else or someone opened this account in my name without my consent or authorization. I swear this account is not mine. I had a

credit report problem in the past when my credit report was mixed. I had to dispute the error and file a lawsuit to have my credit report corrected."

19. Plaintiff requested that an investigation be made into the account and specifically requested that the Regional Finance account be removed from her credit report.

20. Upon information and belief, Trans Union, Equifax, and Experian each forwarded Plaintiff's disputes to Regional Finance.

21. In response to the dispute letter, Trans Union, Equifax, and Experian asserted that the disputed information had been verified as accurate.

22. For example, Equifax mailed correspondence to Plaintiff dated March 11, 2024, that stated "The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated."

23. Trans Union, Equifax, and Experian failed to remove the Regional Finance account because, as a matter of standard practice, they do not conduct an independent investigation of consumer disputes.

24. Plaintiff sent follow up disputes to Equifax, Experian, and Trans Union on or around April 10, 2024, and July 30, 2024, disputing the inaccurate reporting of the Regional Finance account on her credit report.

25. In response to these disputes, Experian, Trans Union, and Equifax refused to delete the erroneous information.

26. As a standard practice, Trans Union, Experian, and Equifax do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]'

imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

27. Upon information and belief and consistent with their standard policies and procedures, Trans Union, Experian, and Equifax automatically generated their "investigation" results once Regional Finance provided its response to Plaintiff's disputes, verifying the status of the account, and no employee from any of the credit reporting agencies took any additional steps after the furnisher provided its response to Plaintiff's dispute.

28. Instead, Trans Union, Experian, and Equifax blindly accepted Regional Finance's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit report.

29. Trans Union, Experian, and Equifax continue the practice of parroting the response from the furnisher even though they have been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

30. Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

31. Instead, Defendants intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA were willful.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EXPERIAN, EQUIFAX & TRANS UNION)**

32. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

33. Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained.

34. As a result of Experian, Equifax, and Trans Union's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

35. Experian, Equifax, and Trans Union's conduct in violating § 1681e(b) was willful, rendering each liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(EXPERIAN, EQUIFAX & TRANS UNION)**

36. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

37. Experian, Equifax, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to

promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of §1681i(a)(5)(A).

38. As a result of Experian, Equifax, and Trans Union's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

39. Experian, Equifax, and Trans Union's conduct in violating § 1681i was willful, rendering each liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(REGIONAL FINANCE)**

40. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

41. On one or more occasion within the past two years, by example only and without limitation, Regional Finance violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

42. When Plaintiff disputed the account with the credit bureaus, Regional Finance used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as Regional Finance). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

43. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

44. Upon information and belief, the ACDV form is the method by which Regional Finance has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

45. Upon information and belief, the credit reporting agencies forwarded Plaintiff's dispute via an ACDV to Regional Finance.

46. Regional Finance understood the nature of Plaintiff's disputes when it received the ACDV forms.

47. Upon information and belief, when Regional Finance received the ACDV form containing Plaintiff's dispute, Regional Finance followed a standard and systematically unlawful process where Regional Finance only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

48. Upon information and belief, when Regional Finance receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

49. As a result of Regional Finance's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

50. Regional Finance's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15

U.S.C. § 1681n. In the alternative, Regional Finance was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

51. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Regional Finance in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(REGIONAL FINANCE)**

52. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

53. On one or more occasions within the past two years, by example only and without limitation, Regional Finance violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

54. As Plaintiff detailed in the previous Count, Regional Finance has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

55. Regional Finance is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

56. Regional Finance does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

57. Regional Finance understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

58. As a result of Regional Finance's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

59. Regional Finance's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

60. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Regional Finance in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT FIVE:**
**Violation of 15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(REGIONAL FINANCE)**

61. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

62. On one or more occasions within the past two years, by example and without limitation, Regional Finance violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including a notation that her accounts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

63. Specially, Regional Finance failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when they responded to the credit reporting agencies, which would have indicated that the account was disputed.

64. Upon information and belief, Plaintiff alleges that Regional Finance rarely, if ever, adds the XB or XC code or other notation that an account was disputed when they responded to ACDV forms.

65. Furthermore, Regional Finance knew that Plaintiff disputed the subject account through her dispute letters to Experian, Equifax, and Trans Union.

66. Plaintiff's disputes were bona fide as the accounts were either mixed into her credit report or fraudulently opened by a third party without her permission.

67. As a result of Regional Finance's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

68. Regional Finance's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recovery against them under 15 U.S.C. § 1681o.

69. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Regional Finance in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**CAROL ROBINSON-HUNTLEY**

*/s/ Kristi C. Kelly*
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7570
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiff*

11